Catos', Justice, delivered the opinion of the court: This was a petition filed under the act to secure liens to mechanics, which became a law December 10th, 1839; and the first error assigned is that the court should have sustained the demurrer to the petition. In determining whether this demurrer was well taken, it is proper that we should first enquire whether a person in possession of and entitled to a pre-emption to a tract of public land, has such an estate in the premises, as to secure a lien to the mechanic, for erecting buildings thereon under a contract with the person thus in possession. We are clearly of opinion that he has. The legislature has wisely seen fit to pass a variety of acts recognizing and affecting the interests in these possessions of the occupants of the public lands. The general government still retains the title to a great proportion of the land, in many of our populous and wealthy counties, on which are permanent improvements of great intrinsic value; and hence the necessity of passing laws adapted to property thus peculiarly situated. To allow a class of persons to hold and enjoy large fortunes beyond the reach of their creditors was too shocking to a sense of justice, to allow it to pass unnoticed by the legislature ; and consequently it has, by repeated acts, treated these improvements as the proper subjects of transfer and ownership. They are made sufficient consideration for contracts and promises. Lands thus owned and occupied are treated as proper subjects for actions of trespass, forcible entry and detainer, forcible detainer and ejectment; and, indeed, they are throughout treated as the property of the individuals possessing them ; and as such they are subject to the control and disposition of the law, so far as the occupant is concerned, as much as if he owned the fee, except, however, that no disposition can be made of them so as to effect in any way a title which may be derived from the United States. In cases of ejectment for these claims, it is only necessary for the plaintiff to deduce a regular title from the first occupant, (unless his claim has been abandoned) who is considered as the fountain of this title, which will prevail, unless opposed by a government title, when it vanishes. Upon such titles depend the security of extensive plantations, and some of the largest manufactories, mills, and machinery in the state. Such is the situation of many populous villages and flourishing towns. To hold that mechanics who have constructed these improvements, have no lien upon them for their labor and materials, while mechanics in all other parts of the state are secured, by operation of law, upon the buildings which they erect, would be attributing to the legislature a partiality and injustice which never could have been intended, and entirely at war with the ['*'532] policy indicated by the whole course of legislation on this subject. It is urged, as a reason why the lien should not attach, that the plaintiff could get nothing by a sale of the premises. But this is an objection which comes with but an ill grace from a defendant for whose benefit the improvements were made, and who is in the enjoyment of them. But this objection leads us still further, and assumes that if the party should pursue his ordinary remedy, and obtain a general execution, still this species of property is entirely beyond his reach. This is not so. The defendant cannot, after having enriched himself at the expense of the mechanic, and while he is in the open and avowed possession and enjoyment of the property, bid defiance to the process of the courts, because it is situated on the public lands. His mouth is, as in justice it should be, forever closed against such an objection. If it cannot be sold because it is of no value, or if the plaintiff chooses to bid it in at his own risk, he alone has a right to complain. But the purchaser, under a legal sale, acquires all the rights, whatever they are, to the entire estate, whatever it is, which the defendant has in the premises, to just the same extent that he would by a voluntary purchase from the party, and the purchaser may bring ejectment - to recover the possession, and the defendairt would be estopped from ¿enying that he had title, as completely as he would be if the proceedings were upon a mortgage which he had executed on the premises. The 17th section of the act provides that the person who has an estate in the premises, though less than a fee simple, shall be considered as the owner, within the meaning of the act, to the extent of his right and interest in the premises, and that the lien shall bind his interest in like manner as a mortgage would have done, and the right of redemption may be sold, or any other right or estate such owner had in the land, at the time of making the contract. Indeed it would seem impossible for the legislature to have used language more comprehensive, to embrace even the most minute or transient interest or estate which the defendant has in the premises; and in this no inconvenience or injustice can result, as will be seen, if we bear in mind constantly, that in selling the defendant’s interest, we in nowise attempt to interfere with, or prejudice any paramount title. We are clearly of opinion that persons owning claims and improvements on the public lands of the United States are embraced within the meaning of this latv, whether they are entitled to pre-emptions thereon or not. The next and scarcely less important enquiry which is presented is whether the party had a right to proceed under the act of December 10th, 1839. The contract was made in October, 1839, but was not completed till August, 1841. The law of 1839 has more specifically defined the mode of proceeding, to obtain the benefit of the lien, and made it a proceeding in chancery, and has required a more particular description of [* 533 ] the contract under which the work was done; and as between the parties to the contract, there is no time specified within which the suit must be brought to save the lieu. The first section of the act of 1839, provides, “ That any person who shall, by contract, etc., furnish labor and materials, etc., shall have a lien,” and the last section of the act repeals, the act of 1833, but provides that “rights acquired and liabilities incurred under that act, shall not be affected by the repeal thereof.” As the only material change which is made by the last act, so far as the rights of parties are concerned, is authorizing mechanics to bring suits to enforce their liens, after the expiration of three months from the time when the payment should have been made, the right of the legislature in affording a remedy under contracts then in existence, where the limitation had not already expired, by applying the provisions of the last act, will hardly be questioned; so that we are left to determine, from the-expression used in the last section of the act, whether the legislature intended that the remedies upon contracts then in existence, but which were not yet completed, should be pursued under the old or the new law. In order to determine this it is necessary to ascertain what are those rights and liabilities spoken of in this repealing clause. We can have no doubt that the right which the plaintiff had acquired to bring a suit by the completion of his contract, and the liability incurred by the defendant to be sued, are the “rights acquired and liabilities incurred under that act,” which should “ not be affected by the repeal thereof.” Before the time had arrived when the compensation was payable, the plaintiff’s rights, at least, were but very imperfect. Indeed he can hardly be said to have acquired airy rights', for he had no cause of action against the defendant, nor liad the defendant till then incurred any tangible liability. And at that time there was no law in existence under which he could prosecute his lien, unless he is allowed the benefit of the act of 1839. As he could prosecute no rights under the law of 1833, which he should thereafter acquire, his lien is gone, unless it exists under the law by which that act was repealed. Then is his lien gone altogether ? Such was manifestly not the intention of the legislature. It intended, as we think it has clearly provided, that rights to prosecute suits, acquired under the law of 1888, should not be affected by its repeal, and similar rights, ydiieh should accrue after the law of 1839 should take effect, should be prosecuted under that law; Hence we are of opinion that this suit was properly instituted under the latter law. The only remaining question, in determining the sufficiency of this petition, is whether the premises sought to be subjected to this lien are sufficiently described. The description in the petition is as follows: “ And your petitioner states that the said [*' 534 ] house is situate on a tract of twelve acres, more or less, included in said quarter section above described, and in that portion of said quarter section, known and described as William Campbell’s addition to Galena, and the said house is known and designated as ‘ Argyle Cottage,’ in which said William Campbell now resides.” By the prayer of the petition this tract of twelve acres, together with the Argyle Cottage, is claimed to be subject to the lien. This description is so indefinite as to render it impossible for the sheriff to point out and locate the premises, should he be directed to sell them under a special execution. We are told that the twelve acre tract is situated somewhere in Campbell’s addition to Galena, but in what part we are not informed. If is true that the twelve acres include Argjde Cottage, but in what part it is located we are not informed. A part of the quarter section is laid off into Campbell’s addition to'Galena, in which, somewhere, the twelve acres are located, hat no landmarks or data are given, to enable any one, by any possibility to locate or describe them. We think this description altpgether insufficient, and for that reason the demurrer should have been sustained. Several other errors have been assigned, of a formal or technical character which we do not think it necessary to investigate. The judgment below is reversed at the costs of the defendant, and the cause remanded with leave to the plaintiff below to amend his petition.